EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

v.

CHILDREN'S HOSPITAL OF PITTSBURGH, Defendant.

Civ. A. No. 75–627.

United States District Court,
W. D. Pennsylvania.

June 30, 1976.

Supplemental Order July 1, 1976.

Edward N. Stoner, II, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendant.

Delores Wilson, Regional Counsel, E. E. O. C., Philadelphia Regional Litigation Center, Philadelphia, Pa., Regional counsel for plaintiff.

James S. Bukes, Dist. Counsel, E. E. O. C., Pittsburgh, Pa., Local counsel for plaintiff.

## OPINION

GOURLEY, Senior District Judge:

This is a civil rights proceeding filed by the plaintiff, Equal Employment Opportunity Commission, against the defendant, Children's Hospital of Pittsburgh, in behalf of Harriet Baum and all other similarly situated female employees of the defendant hospital for alleged violations of the Civil Rights Act, more particularly, Sections 703(a) and 704(a) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. § 2000e et seq. The court has held a full and complete trial in this proceeding and afforded counsel every opportunity to present any and all evidence, oral or documentary in nature, to support their respective positions.

The facts may be briefly stated. Harriet Baum, a female, was first employed by the defendant, Children's Hospital, as a growth and developmental specialist in its Developmental Clinic, on August 7, 1968. Throughout her employment with the Children's Hospital, Harriet Baum worked thirty hours per week and was granted vacation pay and sick pay in amounts equal to three quarters to those granted to full-time employees.

When Mrs. Baum learned of her pregnancy in January of 1973, she immediately notified her supervisor, Dr. Grace Gregg, of her condition and communicated her desire to return to work following a leave of absence. Mrs. Baum also sought and requested of defendant to have her unpaid leave of absence begin at the end of her accumulated sick days and vacation days. Suffice to say, Mrs. Baum was subsequently informed that her leave of absence was approved; however, her request to have her accumulated sick days used up prior to the beginning of her leave of absence was denied as being contrary to hospital policy. Thereafter, on May 10, 1973, Harriet Baum filed with the Equal Employment Opportunity Commis-

sion a charge against the defendant alleging discrimination through its denial to permit her to use the accumulated sick leave for a maternity related disability.

Mrs. Baum remained in the defendant's employ until July 20, 1973, just four days prior to the birth of her daughter on July 24, 1973. Since Mrs. Baum did not begin her maternity leave until August 21, 1973, at the conclusion of her vacation days, she was not scheduled to return to work until November 30, 1973. Accordingly, Mrs. Baum contacted the defendant in the early part of November, 1973, indicating that she was willing and ready to return to work at the conclusion of her maternity leave which was to have ended on November 30, 1973. However, on November 23, 1973, Mrs. Baum received a letter from defendant notifying her that due to economic cuts in the hospital's budget, her position as a growth and developmental specialist had been eliminated and that her services at the hospital were no longer required. This notice and action by the defendant prompted Mrs. Baum to file a second charge with the Equal Employment Opportunity Commission on November 26, 1973, alleging that her discharge was due to the previous charge filed against the defendant with the Equal Employment Opportunity Commission.

It is the plaintiff's contention that the defendant hospital's policy of prohibiting female employees to use their accumulated sick leave for pregnancy or child-birth related disabilities discriminated against women employees in violation of Title VII.

■ Defendant, on the other hand, asserts that this policy is not in violation of Title VII in that sick leave is not a part of wages or salary and that said "sick leave policy" is administered and applied upon the same terms and conditions to all employees, male or female, pregnant or not.

More particularly, that no employee is permitted to schedule sick days prior to the actual date of illness and that sick days can only be applied when an employee is scheduled to work.[1]

■ The court is satisfied after a full and complete trial and after considering the briefs and arguments of counsel that the defendant's sick leave policy which prohibited Harriet Baum from using her accumulated sick leave prior to commencing her leave of absence was discriminatory and in violation of Title VII. The principal aim of Title VII is to protect employees from any form of disparate treatment because of, inter alia, sex, absent a compelling and founded reason for such disparity. Civil Rights Act of 1964, as amended, § 701 et seq.; 42 U.S.C.A. § 2000e et seq.

The law with respect to rights of the pregnant employee is becoming most firm and definite and consistent with the teachings of *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), the court has accorded great deference to the Commission's guidelines as providing the proper interpretation of Title VII.

"Disabilities caused or contributed to by pregnancy, miscarriage, abortion, childbirth, and recovery therefrom are, for all job-related purposes, temporary disabilities and should be treated as such under any health or temporary disability insurance or sick leave plan available in connection with employment. Written and unwritten employment policies and practices involving matters such as the commencement and duration of leave, the availability of extensions, the accrual of seniority and other benefits and privileges, reinstatement, and payment under any health or temporary disability insurance or sick leave plan, formal or informal, shall be applied to disability due to pregnancy or childbirth on the same

---

1. Defendant at the outset seeks to dismiss part of plaintiff's claim on the basis that defendant was not served with the notice of charge within twenty days as set forth in Section 706(b) of Title VII. The court does not believe in the instant proceeding that the defendant was prejudiced in anyway whatsoever and does not believe that procedural niceties should be able to impede a Title VII claimant from obtaining a judicial hearing on the merits. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *Wetzel v. Liberty Mutual Insurance Co.*, 421 U.S. 987, 95 S.Ct. 1989, 44 L.Ed.2d 476; 511 F.2d 199 (1975).

terms and conditions as they are applied to other temporary disabilities." Employment Policies Relating to Pregnancy and Childbirth, 29 C.F.R. § 1604.10(b) (1972).

The United States Court of Appeals for the Third Circuit, in *Liberty Mutual Insurance Company v. Wetzel*, 421 U.S. 987, 95 S.Ct. 1989, 44 L.Ed.2d 476 511 F.2d 199 (3rd Cir. 1975) (vacated and remanded on other grounds), affirmed the District Court's decision on the merits in which it was found that the insurance benefits and maternity leave regulations of the employer, Liberty Mutual, discriminated against women in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A., § 2000e et seq. The employer, Liberty Mutual, had excluded maternity benefits from its income protection plan and the court viewed this type of practice as treating persons in a disparate manner. The court went on to state:

" . . . We believe that pregnancy should be treated as any other temporary disability. Employers offer disability insurance plans to their employees to alleviate the economic burdens caused by the loss of income and the incurrence of medical expenses that arise from the inability to work.

A woman, disabled by pregnancy, has much in common with a person disabled by a temporary illness. They both suffer a loss of income because of absence from work; they both incur medical expenses; and the pregnant woman will probably have hospital expenses while the other person may have none, choosing to convalesce at home.

Thus pregnancy is no different than any other temporary disability under an income protection plan offered to help employees through the financially difficult times caused by illness."

In light of the expressions set forth in *Wetzel*, supra, the court is convinced that logic and justice require the conclusion that any sick leave policy which treats pregnant women differently than employees with other sicknesses or disabilities is sex discrimination in violation of Title VII, since pregnancy is only common to women.[2] The mere fact that defendant applied its sick leave policy equally to male, female, pregnant, nonpregnant employees is of no consequence if in the administration of said policy a protected class of employees is affected in a disparate manner. *Griggs v. Duke Power Co.*, supra, *Wetzel*, supra. Pregnancy and childbirth, which is common only to women, for all practical intents and purposes becomes a temporary disability at some point in time and it is just not practical or realistic to treat said disability differently than any other sickness or disability. Moreover, the court in reviewing the record could find no basis in which to conclude that there was a legitimate nondiscriminatory reason for prohibiting female employees from using their accumulated sick leave during a pregnancy related disability.

The court is satisfied that in the instant proceeding Mrs. Baum was in fact laboring under a temporary disability after the birth of her child and that she was entitled to have her accumulated sick leave used up prior to the commencing of her maternity leave of absence.[3] See also: *Zichy v. City of Philadelphia*, 9 E.P.D. ¶ 10211 (E.D.Pa. 1975), where the court held that the denial of sick leave to the employee disabled be-

**2.** The defendant seems to feel that the United States Supreme Court decision in *Geduldig v. Aiello*, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974) is dispositive of the issue in this proceeding, however, the United States Court of Appeals for the Third Circuit in *Wetzel*, supra, has already reviewed the application of *Aiello* to Title VII cases involving unlawful sex discrimination relating to pregnancy disability and found it not to be controlling. See also: *Satty v. Nashville Gas Co.*, 522 F.2d 850 (6th Cir. 1975); *Holthaus v. Compton and Sons*, 514

F.2d 651 (8th Cir. 1975); *Gilbert v. General Electric Co.*, 519 F.2d 661 (4th Cir. 1975); *Communications Workers of America v. American Telephone and Telegraph Company*, 513 F.2d 1024 (2nd Cir. 1974).

**3.** At the time Harriet Baum went on maternity leave she had accumulated 20.75 or 166 hours of sick leave and her salary was 5.19 per hour or $155.70 per thirty hour week of employment.

cause of pregnancy or childbirth institutes a different treatment of that employee's needs than those of the employee otherwise disabled but without a rational basis for such distinction.[4] Citing *Wetzel, supra,* the court held:

"While Wetzel dealt with an income protection plan, we believe the same reasoning applies readily to a sick leave plan. Such plans are instituted to alleviate the hardship which would otherwise befall an employee temporarily physically disabled from working. The employee disabled from pregnancy or childbirth has just as much need for such protection as the employee disabled because of strictly defined illness or injury. Denial of sick leave to the employee disabled because of pregnancy or childbirth thus constitutes different treatment of that employee's needs than those of the employee otherwise disabled, but without rational basis for such distinction.

Indeed, we would note that an employee stands to lose far more by not having use of a sick leave plan like that involved here than an income protection plan like that involved in *Wetzel.* Whereas the income protection plan preserves only a portion of the employee's pay, the absent employee under the city's sick leave plan here continues not only to receive his full salary, but also to accrue future sick leave as well as time for pension, vacation, promotional, and anniversary date purposes, and other fringe benefits. If the 'illness/non-illness' rationale cannot justify the difference in treatment involved in the income protection plan in *Wetzel,* even less can it justify the substantially greater difference in treatment which the sick leave plan here in issue involves."

■ The plaintiff also seeks relief for all other similarly situated female employees of defendant who were pregnant be-

tween July 10, 1971 and the present. However, the only evidence introduced by plaintiff to support this claim, consisted of a stipulation that the personnel records of those individuals listed contained a reference to either maternity or pregnancy as the reason for beginning their leave of absence or terminating their employment and a list of those individuals alleged to be in the same posture as Harriet Baum. This list contained the following information relative to their claim: Pertinent Date of Hire; Date of Termination or Commencement of Leave of Absence; Hourly Salary at Date of Termination or Commencement of Leave of Absence; Accumulated Unused Sick Days (the Day Represents 8 hours) at Date of Termination or Commencement of Leave of Absence; and Date Returned to Work.

For reasons which will not be discussed, the court is satisfied that the granting of defendant's Motion to Dismiss as to all claims against defendant other than those presented by Harriet Baum was proper.

Pregnancy, in and of itself, is not a disability. To require the defendant to pay the full amount of accumulated sick leave to each pregnant employee who terminated her employment or who went on a leave of absence without more would be most unjust. Sick leave benefits only accrue where the individual is laboring under some sickness or disability.[5] Unquestionably, a pregnant woman, at some point in time, will suffer some temporary disability as a result of her pregnancy, thereby, entitling her to the right to have her sick leave benefits while she remains under that disability. However, the court is not permitted to speculate as to when this condition will occur or how long said disability will last. The case of every woman is different and, therefore, before a woman is entitled to have the benefit of the accumulated sick leave applied to a pregnancy related disability there

---

**4.** For similar holdings in other circuits see: *Satty v. Nashville Gas Co.,* 522 F.2d 850 (6th Cir. 1975); *Berg v. Richmond Unified School District,* 528 F.2d 1208 (9th Cir. 1975).

**5.** The only exception, which is not applicable in this instance, is where an employee may be paid sick days from accumulated sick time on a physician's appointment even if not actually sick at that time if said employee had more than sixty accumulated sick days.

must be some evidence as to when and how long the individual actually labored under said disability.

Very simply, the court is not sufficiently informed as to whether any of the individuals listed were in fact sick or disabled and if so, when and for how long. In view thereof, the court is of the considered opinion that the plaintiff has failed to establish that those employees listed were in fact similarly situated to Harriet Baum.

■ Finally, the court can find no merit to plaintiff's contention that Harriet Baum was discharged from her employment in retaliation for her filing charges for discrimination with the Equal Employment Opportunity Commission.[6] The record reflects that Mrs. Baum's leave of absence was to have expired on November 30, 1973 and that on November 23, 1973, she received a phone call from defendant advising her that her position at the clinic had been eliminated because of a cut in monies which the hospital was to have received from the Allegheny County Mental Health/Mental Retardation Program to operate the Developmental Clinic. Even after a full and fair opportunity had been afforded to the plaintiff, the court is unpersuaded that Mrs. Baum's termination by defendant was in retaliation for her voicing opposition to the hospital's sick pay policies and the filing of a charge with the Equal Employment Opportunity Commission.

The court is satisfied that under all the facts and circumstances defendant's decision to terminate some of its personnel to accommodate for the cut in funding was done for a justifiable economic reason, and the court can find nothing in the record to support plaintiff's contention that defendant's reason for dismissing Mrs. Baum was pretextual. Although the record reflects that the defendant hospital did not experience as great a cut in funding as it had expected, this fact was not known to the defendant at the time the positions were eliminated in the Growth and Developmental Clinic. Defendant hospital terminated

Mrs. Baum's position on the good faith and belief that their funding had been reduced and it was not until sometime subsequent to her termination that defendant was informed that part of their funding had been restored. Very simply, the court is convinced that after a most careful review of the record, that there is no basis upon which the court can conclude that the termination of Mrs. Baum was the result of retaliation on the part of the defendant. On the contrary, the record reflects that the sole basis for defendant's actions was founded on economic considerations.

Accordingly, the court can find no basis for the awarding of any damages or back pay since Mrs. Baum's termination was not the result of retaliation on the part of defendant.

In view thereof, Harriet Baum is entitled to receive payment for her accumulated sick days as computed below:

166 hours (accumulated sick days in hours for 1973)

$$\times$$

5.19 (rate of pay per hour in 1973) = \$861.87

Findings of fact and conclusions of law have not been separately stated but are included in the body of the foregoing opinion as specifically authorized by Rule 52(a) of the Federal Rules of Civil Procedure.

An appropriate order is entered.

### ORDER

AND NOW, this 30th day of June, 1976, judgment is hereby entered in favor of Harriet Baum only and against the defendant, Children's Hospital of Pittsburgh, for payment of accumulated sick days in the amount of \$861.87 with interest at the rate of 6% from the date she officially began her leave of absence.

IT IS FURTHER ORDERED AND DECREED that judgment is hereby entered in favor of the defendant, Children's Hospital of Pittsburgh, and against the plaintiff,

---

**6.** Section 704(a) of Title VII, 42 U.S.C.A. § 2000e–3(a) makes it unlawful to discharge an employee because of his opposition to practices made unlawful by the Act.

Equal Employment Opportunity Commission, for any and all claims presented in behalf of those persons other than Mrs. Harriet Baum.

## SUPPLEMENTAL ORDER

AND NOW, this 1st day of July, 1976, the court, through an apparent oversight, failed and neglected to refer in its order of June 30, 1976 to make any reference to plaintiff's request for injunctive relief.

IT IS FURTHER ORDERED AND DECREED that Children's Hospital, its officers, agents, employees, successors, assigns and all persons in active concert or participation with it, are hereby permanently enjoined from denying any female employee from using accumulated sick days for any pregnancy related or childbirth disability upon proof and application of same.