Ann SMITH, Appellant,

v.

REXALL DRUG COMPANY, Appellee.

No. 76–1482.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1977.

Decided Feb. 4, 1977.

Louis Gilden, St. Louis, Mo., for appellant; Doreen D. Dodson, St. Louis, Mo., on the brief.

Sandra L. Schermerhorn, Kansas City, Mo., for appellee; Harry L. Browne, Kansas City, Mo., on the brief.

Before HEANEY and STEPHENSON, Circuit Judges, and STUART,* District Judge.

---

* The Honorable William C. Stuart, United States District Judge for the Southern District of Iowa, sitting by designation.

1. The Honorable H. Kenneth Wangelin, United States District Judge for the Eastern District of Missouri. The memorandum containing the

STEPHENSON, Circuit Judge.

Plaintiff Ann Smith brought this action below alleging that the defendant Rexall Drug Company engaged in discriminatory activities which were retaliatory and therefore in violation of section 704, Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e–3). The district court, after a non-jury trial, found that the termination of plaintiff's employment was non-discriminatory and entered judgment for the defendant.[1] In this appeal plaintiff's principal complaint is that the trial court's findings were clearly erroneous. We affirm the judgment for the defendant.

Appellant Smith was employed by Rexall at the company's Goodfellow warehouse facility in St. Louis, Missouri, from September 1966 until her termination on April 20, 1973. In 1971 appellant, with ten other female employees, filed a complaint in the United States District Court for the Eastern District of Missouri titled *Garbs v. Rexall Drug Co., et al. (Garbs)*, alleging sex discrimination against Rexall and Local 5–136, Oil, Chemical, and Atomic Workers International Union AFL–CIO. A settlement agreement was entered into among all the parties on March 2, 1973. The agreement included specific promises by Rexall not to discriminate against females employed at the Goodfellow warehouse because of their sex; to train and upgrade females at the warehouse by posting permanent promotions; to provide training by selecting employees for temporary vacancies and daily upgrading on the basis of seniority and to allow bidding for permanent promotional jobs after layoff on the basis of seniority. In addition, substantial awards of back pay were made to the eleven named plaintiffs.

In the late 1960's Rexall began to suffer financial losses which resulted in management undertaking a reorganization of the

court's findings of fact and conclusions of law is published as *Smith v. Rexall Drug Co.*, 415 F.Supp. 591 (E.D.Mo.1976).

business, which included a reduction in the number of its products and in the office and sales force. Its Boston distribution system was closed down entirely by 1972.

During this period Rexall had two facilities in St. Louis, a manufacturing operation located on Kingshighway and a warehouse and distribution facility located on Goodfellow. In the fall of 1972 Rexall began to discuss with union officials a reduction in the work force which included the closing of the Goodfellow facility and the transfer of its operations to the Kingshighway facility. The close-down of Goodfellow was finally completed in early May 1973. During the closing-out process some of the employees at Goodfellow with the requisite seniority were transferred to the Kingshighway facility.

Prior to the close-out the company agreed to be bound by the election of the bargaining unit employees as to whether the situation would be characterized as a layoff with recall rights or termination with severance pay. By accepting severance pay, the employees forfeited recall rights under the layoff and seniority provisions of the collective bargaining agreement. On April 10, 1973, the employees voted overwhelmingly to accept termination with severance pay. On April 20, 1973, 30 employees, including appellant, accepted severance pay.

Appellant contended below that she was told that because of her low seniority she would be terminated whether she signed the severance agreement or not and that she was misled into believing that in view of the large reduction in the number of employees there was no chance of recall. In substance she charged that she was discharged because of her participation in the Garbs litigation, and for the same reason was deprived of the opportunity to either transfer to, or apply as a new applicant at the Kingshighway factory.

■ The district court found that "there is no credible evidence to indicate that plaintiff was induced to sign her termination agreement or otherwise terminated for any reason of retaliation." Smith v. Rexall Drug Co., supra, 415 F.Supp. at 592. We cannot say this finding is clearly erroneous. The record indicates that at all times material thereto appellant was a member of the negotiating team of her union and in the words of the district court, "She knew or should have known of the proposed reduction of the work force in the Goodfellow facility on March 2, 1973, the date of the settlement agreement concerning Garbs v. Rexall Drug, supra." Smith v. Rexall Drug Co., supra, 415 F.Supp. at 592.

■ Appellant further claims that the trial court erred in holding that the settlement agreement in Garbs on March 2, 1973, was not entered into fraudulently. Appellant has made it abundantly clear that she is not attempting to set aside the Garbs settlement, but does claim that the agreement had no practical effect since it provided that the promises of the company and the union with respect to employment, training, and promotion of females would remain in effect for three years or until Rexall ceased operations at Goodfellow, whichever occurred first. Appellant argues that Rexall at the time of the agreement knew that Goodfellow would cease to be a viable warehouse and that certain of the women would be terminated. The difficulty is that appellant, as a member of the union negotiating team, was also aware of the proposed reduction of the workforce at Goodfellow and that jobs would be eliminated. The close-down and reduction in force was on a seniority basis in accordance with the collective bargaining agreement. The evidence indicates that of the eleven plaintiffs in the Garbs litigation, five had greater seniority than appellant and as a result were either transferred to the Kingshighway facility or voluntarily requested and accepted severance pay. When the close-down was completed between 40 and 50 employees, including both men and women, were terminated with severance pay. It is difficult to conclude that the trial court's failure to find fraud under these circumstances was clearly erroneous and we refuse to do so.

■ Finally appellant argues that the district court erred in finding that the

transfer of Edward Molitor, the vice-president of the union and a person with less seniority than appellant, was not pretextual. Appellant claims Molitor's transfer was a reward for his part in obtaining the *Garbs* settlement agreement. We find it unnecessary to decide this issue. Taking the evidence most favorable to the appellant the most that can be said is that Molitor received special consideration not afforded a large number of employees, male and female. It does not follow that retaliation against appellant was involved.

We are satisfied from our review of the record that the trial court's finding and conclusion that Rexall did not engage in discriminatory activity in violation of section 704 of the Civil Rights Act of 1964 (42 U.S.C. § 2000e–3) must be affirmed.

Affirmed.