Verna L. BARNES, Plaintiff-Appellant,

v.

ST. CATHERINE'S HOSPITAL,
Defendant-Appellee.

No. 76–1978.

United States Court of Appeals,
Seventh Circuit.

Argued April 21, 1977.

Decided Sept. 20, 1977.

Albert C. Hand, Andrew P. Rodovich, Hammond, Ind., for plaintiff-appellant.

W. E. Whittington, IV, Roy S. Kullby, Chicago, Ill., for defendant-appellee.

Before CUMMINGS, PELL and BAUER, Circuit Judges.

PELL, Circuit Judge.

Plaintiff Barnes brought this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, alleging, *inter alia,* that the defendant hospital terminated her employment because of her race and color. After a bench trial, the district court entered a judgment denying relief and dismissing the action with prejudice. The plaintiff noticed an appeal from the adverse judgment of July 7, 1976, and from the order of July 23, 1976, denying her motion for a new trial.

I

Verna L. Barnes, a black, female, licensed practical nurse (LPN), was employed by St. Catherine's Hospital from July 1966 until August 1968, and again from October 1970 to August 1971, when she was discharged. The precipitating incident leading to her termination was her failure or refusal to report for work on August 8, 1971. Two versions of the incident were presented at trial, and the trial judge essentially accepted the hospital's version.[1]

The plaintiff's version of the events of August 8th was set forth in her charge to the Equal Employment Opportunity Commission (EEOC) and in her testimony at trial. On the day in question, she was tired, fatigued, and unable to perform her required job assignment of passing medication. She called the hospital and notified her supervisor that she would not be able to work that day. Although the supervising nurse urged the plaintiff to come to work, the plaintiff indicated that she was physically unable to do so and remained at home and in bed that evening.

The hospital's version differs. A Personnel Performance Report Form indicates that Mrs. Barnes stated during her telephone call that she would be in for work.[2] After discovering that the plaintiff had not reported for work, supervisor Sadewasser recommended that the plaintiff be discharged. Other supervisors concurred in, and Schride, the Director of Nursing Services, accepted, that recommendation.

Similarly, there is a dispute regarding the reason for the plaintiff's discharge. Plaintiff Barnes was orally notified by nurse Martinsen on August 9, 1971, that she had been terminated for failure to work the previous day. The plaintiff then and afterwards thought that she was being discharged for excessive absenteeism and tardiness. Her charge to the EEOC expressed this view,[3] and her trial testimony subsequently reflected the theory that she had

---

1. The trial judge adopted essentially verbatim the defendant's proposed findings of fact and conclusions of law. For a discussion of this practice, see *Schwerman Trucking Co. v. Gartland Steamship Company,* 496 F.2d 466 (7th Cir. 1974).

2. The supervisor's comments read as follows:
   Mrs. Barnes called at 2:00 pm that she would not be in to work, stating that she was tired of working alone with just a RN, and that another scheduled LPN (Orto) was always sent to another unit leaving her to do all the work. She was told Mrs. Orto had called off and there was no replacement. Stated she had other obligations and was so

tired, could hardly move her feet. After a 10 min. talk, she said she would be in. On my 5:30 pm bed check, I was told she had not come in, leaving Mrs. Zurawski RN (preg) alone with 3 aides—All admissions to unit were stopped for night.

3. Plaintiff Barnes' EEOC charge, filed September 20, 1971, approximately six weeks after the termination, in pertinent part, stated:
   On August 9, 1971 I was called on the phone and told because I had called in Absent Aug. 8, I was being terminated for excessive absenteism [sic] and tardiness. Many others had called in but I was the only one fired.

been subjected to disparate treatment by virtue of the fact that she had never received written warnings or suspensions for her absences and tardinesses in accordance with the procedures outlined in the hospital's handbook. The plaintiff compiled a statistical compilation drawn from the personnel files of employees discharged by the hospital in an attempt to demonstrate that white employees were consistently given more written warnings and were permitted more infractions of the hospital rules prior to any suspension or termination against them.

The defendant hospital introduced evidence intended to establish its theory, i. e., that the compelling reason for the termination was her insubordination, as shown by her disregard of the order to come to work on August 8th. Moreover, it was essentially undisputed that after the termination of Mrs. Barnes, the defendant hospital advised other medical institutions that the plaintiff had been terminated for insubordination. The hospital's Termination of Employment form gave "Insubordination" as the reason for her discharge.

The different views regarding the alleged insubordination impinge directly upon the parties' theory of the case. Plaintiff Barnes submits that there is no evidence of insubordination in the personnel records and employment of the plaintiff and argues that the false and misleading evaluations

prepared by the hospital interfered with her ability to obtain new employment, resulted in loss of wages, and indicated a continued pattern of racial discrimination against her. The hospital, she argues, in essence, is using its claim of insubordination as a shield against the Barnes claim of racial discrimination and as a sword to attack the relevance of statistics relating to three employees (Orto, Rincon, and Caporale) whose attendance records were facially worse than that of Barnes.

## II

The first issue in this appeal is whether the trial court's findings of fact are clearly erroneous. The plaintiff contends that Findings Nos. 4, 7, 10, 11, and 22 are contrary to and unsupported by the evidence introduced at trial.

We are not disposed to ignore the district court's findings unless, upon review of the evidence in the case, we are of the opinion that they are clearly erroneous. We have reviewed the evidence in the case and are of the firm opinion that the aforementioned findings are not clearly erroneous. *Schwerman Trucking Co., supra* at 475.

We deem it necessary to discuss only Findings No. 10 [4] and No. 22.[5] The former finding speaks to the critical question of insubordination, while the latter both discounts the causal role of absenteeism and

---

4. "On August 8, 1971, plaintiff called her supervisor and stated that she did not wish to come to work that day because she did not like to work alone with only one Registered Nurse and only one other LPN on the floor, and because she said she was 'fatigued.' The supervisor stated she had no substitute for plaintiff and that plaintiff *must come to work* for her regular shift. Plaintiff admitted that she had no actual physical illness or disease, but nevertheless *refused* to come to work even though her supervisor *ordered her to do so.* Plaintiff stated to the supervisor that if she felt better, she would show up for work. However, plaintiff did not call the supervisor again to tell her that she would not come to work, but merely *refused and failed* to do so. The supervisor did not learn of the actual absence of plaintiff until some hours after the shift began. Because of plaintiff's absence, all admissions to that unit

in the hospital were stopped for the night." [Emphasis supplied.]

5. "The plaintiff's attendance card shows 4 days tardy in her first month of employment, 25 days tardy and one absence between November 14, 1970 and July 1, 1971 and 8 days sick from January 27, 1971 to July 18, 1971. Additionally, the plaintiff was on suspension on December 21, 22 and 23, 1970, and was absent without excuse on December 18, 1970 and August 8, 1971. Plaintiff's record cumulated to the decision to discharge made on August 8, 1971 [sic: August 9, 1971] and not just her tardiness or because of absenteeism. The evidence discloses no white or male employee with a composite record so much worse than the plaintiff's who was treated so much more favorably than the plaintiff that the conclusion could be made that plaintiff was discharged for reasons of her race, color or sex."

tardiness and refuses to infer that "racially premised" disparate treatment existed.[6]

■ A crucial factual question is whether Sadewasser, the night supervisor, ordered Barnes to report to work. The trial court so found, although the Personnel Report Form, *see* note 2 *supra*, makes no reference to such an order. However, at trial, upon cross-examination, Barnes testified both that supervisor Sadewasser "urged" her to come in and that the supervisor "insisted" that she come in.[7] The plaintiff's main argument regarding Finding No. 10 is that it is contrary to her testimony at trial. The transcript of the trial undercuts that argument. Upon examination of the record, we are persuaded that the trial judge could properly interpret the urging and insistence of the supervisor as a statement that Barnes must come to work for her regular shift. The incompleteness or ambiguity of the Personnel Report was factually supplemented by the plaintiff's admissions upon cross-examination. Because the evidence allowed an inferential finding that Sadewasser ordered Barnes to show up for work, the court's related finding that Barnes refused to come to work is similarly supported by the evidence.

The plaintiff's challenge of Finding No. 22 focuses on the claim that the hospital's personnel files indicate that white employees were consistently given more written warnings and were permitted more infractions of the hospital rules prior to any termination against them. Assuming but without deciding that such is the fact,[8] the plaintiff's contention misses the essential thrust of Finding 22.

■ The last sentence of that finding does not purport to contradict the fact that individual white employees having facially worse attendance records than Mrs. Barnes were not disciplined so severely. The entire finding must be read in the light of the factual determination that the plaintiff had refused to come to work. Thus, the final sentence complements factual assertions regarding Mrs. Barnes' unexcused absences, one of which was insubordinate. The third sentence of the finding cumulates factors other than attendance as underlying the decision to discharge. Although the third sentence is constructed awkwardly, it implicitly incorporates Finding No. 10 as a component of plaintiff's record of employment with the hospital. Clearly, the trial judge rejected Mrs. Barnes' theory that she was terminated because of excessive absenteeism and tardiness.

■ Further, assuming that "disparate treatment" was established by virtue of the personnel files, the law requires proof of a racial motive underlying a discharge decision in order to sustain a claim under 42 U.S.C. § 2000e–2(a). *See Teamsters, supra* at 335 n. 15, 97 S.Ct. 1843. The last sentence of the finding represents an assessment of the composite picture presented by the personnel records. As the trier-of-fact, the judge refused to draw an arguably permissive inference of racial discrimination. The judge's factual determination that the unexcused and insubordinate absence on August 8th played an important role in the discharge of Mrs. Barnes allowed

---

**6.** In *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), the Supreme Court discussed the controlling legal principles applicable to suits charging violations of Section 703(a) of Title VII, 42 U.S.C. § 2000e–2(a), and noted that "[t]he ultimate factual issues are thus simply whether there was a pattern or practice of such disparate treatment and, if so, whether the differences were 'racially premised.'"

**7.** In response to a question regarding a second call to Sadewasser, the plaintiff supported not only her own theory that she was merely call-

ing off duty but the defendant's theory of insubordination, as follows:

A When I called, I called to report off work and Mrs. Sadewasser would not accept it. And even though I told her I felt lousy, *she still insisted that I come in* so when she asked me if I felt better would I come in and I said that if I felt better I would come in. [Emphasis supplied.]

**8.** It could be argued that cold, numerical data does not establish "disparate treatment" when qualitative analysis of the occurrences underlying the data compilation suggests persuasively that the statistical analysis is comparing "apples with oranges."

him to discount the probative force of the statistical evidence and to reject the conclusion that race, color, or sex was the reason for the discharge. We are not to redetermine the facts de novo upon appellate review. Where the evidence is in dispute, the prevailing party is entitled to have it viewed on review in the light most favorable to it. *Cf. Indiana State Employees Association, Inc. v. Negley,* 501 F.2d 1239 (7th Cir. 1974). Approaching the instant case in light of these established principles, we cannot say that Finding No. 22 is clearly erroneous.

### III

The second issue in this appeal is whether the court's decision favorable to the defendant hospital violated *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), by mislocating the burden of persuasion. The plaintiff reads the record as clearly demonstrating that she was terminated for calling off work for one day with a good and valid physical reason, and she accordingly argues that the hospital failed to produce any evidence of probative value to rebut the plaintiff's prima facie case of racial discrimination.

■■■■ Our recent decision of *Flowers v. Crouch-Walker Corporation,* 552 F.2d 1277 (7th Cir. 1977), discusses the order and allocation of proof in private non-class actions challenging employment discrimination. No useful purpose is served by repeating that discussion. We think it sufficient to note that the hospital introduced competent evidence tending to prove that Mrs. Barnes was terminated because of her insubordination. Moreover, the burden to preponderate upon all the evidence remains with the plaintiff in a Title VII case just as in any other case. In the instant case, after finding that plaintiff had refused to come to work on August 8, 1971, the district court concluded that Mrs. Barnes had failed to prove by a preponderance of the evidence that the hospital had discharged her because of race, color, or sex. After examining the trial record, we are satisfied that no adequate ground exists for disturbing the result reached by the district judge and that his conclusions of law were appropriate. *See Schwerman Trucking Co., supra* at 478. The showing of a nondiscriminatory reason for the complained of action rendered the plaintiff subject to an involuntary dismissal. *Flowers, supra; Sime v. Trustees of the California State University and Colleges,* 526 F.2d 1112, 1114 (9th Cir. 1975).

### IV

The third asserted issue in this appeal is whether the trial court prejudged the case prior to the introduction of all of the evidence. The plaintiff points to a number of comments of the trial judge which, she says, indicate hostility and bias toward the plaintiff and her attorneys and further indicate that he had already reached his verdict before the plaintiff had rested her case and before the judge was able to review the personnel files. The plaintiff insists that the trial judge's feelings and hostilities caused him to ignore the proceedings that were being conducted and to concern himself with making a record that would withstand the scrutiny of a reviewing court.

The plaintiff's motion for a new trial pinpointed her charge that the court had prejudged the case prior to the introduction of all the evidence. In particular, she charged that the court had (a) indicated that the evidence showed that the plaintiff had been discharged for insubordination when that fact had been denied by her and was in dispute, (b) indicated that it was admitting Exhibit No. 22 into evidence only to prevent reversible error on appeal, (c) directed its attention to matters other than the proceedings by signing documents brought for his signature during the testimony of witnesses, and (d) failed to consider all of the relevant evidence because the court was on personal vacation from approximately the completion of the trial until the day before the entry of the final judgment.[9]

9. The plaintiff has attached as an Exhibit B to her brief certified copies of the court's schedule

from June 14, 1976, to July 9, 1976. The court denied plaintiff's motion for correction of the

Although the trial of the instant case, as very few, if any, do, did not reach absolute perfection, it was a fair trial. The trial court's assertion that two of the plaintiff's exhibits stated what had already been proved, *viz.*, that she was a good and average worker who had been "discharged for insubordination," can only fairly be interpreted as the court's indication that evidence already in the record bore upon those questions. We interpret the judge's remark as reflecting his concern about the cumulative nature of the proffered evidence rather than as embodying an oral finding of fact. The plaintiff's exhibits only duplicated what was already in evidence, *i. e.*, "proven" by other exhibits. Similarly, the judge's remark about withstanding the scrutiny of the court of appeals came in the context of ruling upon the admissibility of a group exhibit presented in the form of a full transfer case of personnel files. Although the plaintiff did not attempt at that time to follow the lead of Fed.R.Evid. 1006 by summarizing the contents of these voluminous writings, the district court nevertheless ruled the full transfer case admissible. We do not regard the judge's reference to his concern about reversible error if he excluded Group Exhibit No. 22 as implying that he had already arrived at his decision on the merits of the case. It does appear to us that if a court entertains the idea that exclusion of evidence would probably constitute reversible error, the court would as a general rule be well advised not to exclude it.

That the judge signed documents while witnesses were testifying does not compel the inference that he was inattentive, and the transcript of the trial demolishes any claim that he was. Indeed, the judge was so attentive at the trial that he was quick to recognize and to express impatience with the cumulative nature of many of the evidentiary offerings. Similar-

ly, the fact that the judge took a vacation for a portion of the time between the completion of the trial and the date upon which he rendered his decision does not mean that the judge refused or failed to consider the plaintiff's evidence. Indeed, the plaintiff attached as an exhibit to her post-trial brief an extensive digest and analysis of the ninety-three personnel folders contained in Group Exhibit No. 22. The trial judge could properly discount the significance of those files once he determined that Mrs. Barnes had refused to come to work after night supervisor Sadewasser insisted that she report.

A motion for a new trial is addressed to the sound discretion of the district court. Upon review of the record transmitted to this court, we are unable to say that the trial judge abused his discretion in denying the motion.

V

The last issue in this appeal is whether the district court abused its discretion by admitting into evidence and considering the decision of an arbitrator upholding the plaintiff's discharge. The court overruled plaintiff's objection to the use of the arbitration decision on the basis of *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). This evidentiary ruling was correct. For the reasons hereinbefore stated, the judgment of July 7, 1976, and the order of July 23, 1976, are

AFFIRMED.

---

record on November 16, 1976. The trial judge's schedule and calendar were not filed in the district court and are not includable in the record on appeal. *See* Rule 10(a), Fed.R. App.P.; 9 Moore's Federal Practice ¶ 210.04[1]

(1975 ed.). Moreover, on December 13, 1976, this court granted the plaintiff's motion to dispense with the requirement of filing an appendix to the brief and requesting that the appeal be heard on the basis of the original record.