Alfred EKANEM et al.,
Plaintiffs-Appellees,

v.

The HEALTH & HOSPITAL CORPORA-
TION OF MARION COUNTY et al.,
Defendants-Appellants.

No. 78–2092.

United States Court of Appeals,
Seventh Circuit.

Heard Nov. 9, 1978.

Decided Dec. 21, 1978.

Rehearing En Banc Denied Jan. 18, 1979.

Gregory J. Utken, Indianapolis, Ind., for defendants-appellants.

John O. Moss, Indianapolis, Ind., for plaintiffs-appellees.

Before CUMMINGS, SPRECHER and WOOD, Circuit Judges.

PER CURIAM.

Alfred Ekanem, a black, Mrs. Linda Marshall, a white, and two other individuals[1] brought this class action[2] against The Health & Hospital Corporation of Marion County, Indiana (the Corporation), five officials and six institutions. The suit was filed under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*) and under 42 U.S.C. §§ 1981, 1983, 1985(3) and 1988. The complaint alleged both that the defendants engaged in a pattern of employment discrimination based on race and encompassing hiring, job assignments, transfers, promotions and the like, and that they unlawfully retaliated against the individual plaintiffs for protesting such discrimination. Specifically, plaintiff Ekanem asserted that he was the victim of retaliatory discharges, and plaintiff Marshall alleged retaliatory discrimination in working conditions.

The district court granted plaintiffs' motion for a preliminary injunction reinstating plaintiff Ekanem to his employment with the Corporation and prohibiting retaliation by the Corporation against plaintiff Marshall and other employees. Defendants appeal that order.

This suit arises out of a series of conflicts between the plaintiffs and their employer spanning several years. Mr. Ekanem was hired by the Corporation as an interviewer in its personnel department in October 1972, and was promoted to Assistant Personnel Director on January 1, 1974. In December 1974, however, he was involuntarily transferred to the position of Deputy Administrator of the Corporation's Community Development Health Program (CDHP). On December 12, 1974, a number of employees, including plaintiff Marshall, signed a petition protesting Ekanem's transfer from the personnel department. Plaintiff Ekanem filed a charge with the Equal Employment Opportunity Commission (EEOC) on February 11, 1975, alleging that his transfer was an unlawful retaliation for his having protested the Corporation's discriminatory policies. On March 3, 1977, the EEOC issued its determination that there was probable cause to believe the transfer had been retaliatory.

Plaintiff Marshall was first employed by the Corporation in February 1970. In September 1974, the National Association for the Advancement of Colored People (NAACP) filed a third-party charge with the EEOC, alleging racially discriminatory employment practices by the Corporation. Plaintiff Marshall was certified as one of the employees on whose behalf this third-party charge was filed.[3] In March 1976, Mrs. Marshall was transferred to the CDHP office at her own request.

On February 2, 1977, the CDHP office was closed and plaintiffs Marshall and Ekanem were terminated. On February 7 both of them filed charges with the EEOC, alleging they had been discharged "with no reason given." Mrs. Marshall's request to transfer to another department of the Corporation was granted, and she has been employed there since February 6, 1977. Mr. Ekanem, however, has been unable to find any regular employment.

1. The other individual plaintiffs were Toni Hardiman Spicer, a black woman, and Donald Kemp, a white. At the conclusion of the hearing on the motion for a preliminary injunction, the district court ruled that there was just cause for Mrs. Spicer's discharge and no basis to make a finding in Kemp's favor (Tr. 909–910). They have not appealed. Consequently, this opinion will not discuss their charges.

2. The class has not yet been certified.

3. According to the Corporation, it is the policy of the EEOC not to reveal the identity of employees certifying third-party charges and it did not in fact know that Mrs. Marshall had participated in the 1974 charge until this suit was begun. This assertion is unrefuted, but the district court did find that the Corporation was generally aware of Mrs. Marshall's opposition to its employment practices.

In his February 1977 charge before the EEOC, Ekanem claimed that the Corporation discriminated against him because he had protested racial discrimination and had filed the previous EEOC charge against it in February 1975. Plaintiff Marshall's charge claimed that the Corporation discriminated against her because she had protested discriminatory practices and because of her white race.

The February 1977 charges resulted in both plaintiffs receiving right-to-sue letters from the Department of Justice authorizing them to institute suit under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.). However, no finding was made as to probable cause to believe that discrimination had occurred with regard to these charges. The letters were dated April 27, 1978, and received about April 29, 1978. Plaintiffs had filed the complaint in this action on April 18, 1977. As a result of receiving the April 27 right-to-sue letters, plaintiffs filed a motion for a preliminary injunction on June 12, 1978, and two days thereafter requested leave to file their amended complaint to include references to those letters.[4] The motion for preliminary injunction was supported by an affidavit of Ekanem stating that he was discharged because he was black and because he encouraged the Corporation to follow non-discriminatory employment practices and that Mrs. Marshall was discharged because she encouraged the Corporation to follow non-discriminatory employment practices. Ekanem also alleged in his affidavit that in contrast to other employees of phased-out departments of the Corporation, he was not absorbed elsewhere in the Corporation and had remained unemployed ever since his February 1977 discharge.

Commencing July 5, 1978, the district court conducted an evidentiary hearing with respect to plaintiffs' motion for a preliminary injunction. At the close of the five-and-one-half day hearing, Judge Steckler requested counsel for plaintiffs to prepare findings of fact and conclusions of law to support the issuance of a preliminary injunction ordering Ekanem to be reinstated in a position comparable to the one he had held and restraining the Corporation from taking any retaliatory measures against Mrs. Marshall or other employees who might engage in activities protected by Title VII of the Civil Rights Act of 1964.

On August 18, 1978, the district court entered a preliminary injunction order in plaintiffs' favor, together with supporting findings of fact and conclusions of law. According to the findings of fact prepared by plaintiffs' counsel and adopted by the district court, in late 1973 and throughout 1974 Mrs. Marshall engaged in activities protesting alleged discriminatory employment practices of the Corporation. Specifically, on September 5, 1974, she participated in the filing of the NAACP third-party charge before the EEOC against the Corporation and on December 12, 1974, she signed the petition requesting the reinstatement of Ekanem to his position as Assistant Personnel Director.[5] The district court also found that Mrs. Marshall had voluntarily transferred to the Corporation's CDHP department on March 8, 1976.

The findings also traced Ekanem's employment record with the Corporation, stating that the Corporation had terminated him from his position as Assistant Personnel Director in retaliation for his opposition

4. Leave to file the amended complaint was granted on August 18, 1978, and the preliminary injunction of the same date was seemingly keyed to the amended complaint.

5. According to the Corporation, Ekanem was transferred to the position of Deputy Administrator of its CDHP because of certain of his actions undermining management in dealing with Local 2065 of the American Federation of State, County and Municipal Employees, with whom the Corporation had a collective bargain-

ing agreement. This transfer resulted in a $3,000 salary increase and the acquisition of a private office, which Ekanem had not had in his prior position. However, the EEOC found that Ekanem was paid less than the minimum salary specified for his new position and that he was not given the cost-of-living increase that other employees received in January 1975 (Plaintiffs' Exhibit 32) but those matters are not involved in this complaint.

to the Corporation's employment practices.[6] The court also found that on February 2, 1977, the Corporation terminated Ekanem's, Mrs. Marshall's and Donald Kemp's[7] employment when it phased out its CDHP department while absorbing the other three employees of that department. According to the findings of fact, Ekanem suffered irreparable harm since February 2, 1977, in that he had not obtained comparable employment and had been restricted from membership in certain professional societies because of his loss of active employment. Judge Steckler concluded that the loss of professional associations was not "subject to measurement and monetary compensation." Moreover, he found that the Corporation would not be harmed if required to reinstate Ekanem and concluded that he should be reinstated to a position comparable to the one he held immediately prior to his discharge. Finally, the court found that defendants should be enjoined from discriminating against Mrs. Marshall and any other employees of the Corporation who had protested its alleged discriminatory employment practices. Consequently a preliminary injunction was entered with respect to Ekanem's reinstatement and forbidding retaliation against Mrs. Marshall.

Defendants have appealed from the preliminary injunction order. Because their application for a stay pending appeal was denied, Ekanem has been reemployed by the Corporation. The gravamen of the appeal is that the district court abused its discretion in granting preliminary relief to plaintiffs. We agree that plaintiffs failed to establish necessary elements for the granting of a preliminary injunction and therefore reverse. Indeed the district judge forecast our action (Tr. 909).

The plaintiffs emphasize that most of the cases supporting the defendants' contention that the injunction was improper involved refusals by district courts to grant preliminary injunctions.[8] They contrast that situation with the present one, where the district court has exercised its equitable powers, and stress that reviewing courts hold that the decision to grant or deny interlocutory injunctive relief is one of judicial discretion. See, e. g., *Kolz v. Board of Education,* 576 F.2d 747 (7th Cir. 1978). But to say that a district court may exercise discretion is not to say that such discretion is unreviewable. Discretionary choices "are not left to a court's 'inclination, but to its judgment; and its judgment is to be guided by sound legal principles'." *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 416, 95 S.Ct. 2362, 2371, 45 L.Ed.2d 280.

To succeed in obtaining a preliminary injunction, a plaintiff seeking reinstatement in an employment case, like any other plaintiff, "must establish a reasonable probability of success on the merits, irreparable injury, the lack of serious adverse effects on others, and sufficient public interest." *Kolz v. Board of Education, supra* at 748; 11 Wright and Miller, *Federal Practice and Procedure,* § 2948. The legal principles as to what must be established for a plaintiff to prevail on the merits and as to what constitutes irreparable harm[9] in this context are well established. The district court failed to comply with these principles, and its preliminary injunction order must therefore be reversed.

*Insufficient Likelihood of Prevailing on the Merits*

Plaintiff Ekanem has sought relief under Title VII of the 1964 Civil Rights Act on the theory that he received disparate treatment. In order to sustain such a claim, he must prove a discriminatory racial

---

**6.** This "termination" was the involuntary transfer to the CDHP office previously described.

**7.** See note 1 *supra.*

**8.** *Faro v. New York University,* 502 F.2d 1229 (2d Cir. 1974); *Theodore v. Elmhurst College,* 421 F.Supp. 355 (N.D.Ill.1976); *Oburn v. Shapp,* 521 F.2d 142 (3d Cir. 1975); *Gresham v.*

*Chambers,* 501 F.2d 687 (2d Cir. 1974); *Washington v. Walker,* 529 F.2d 1062 (7th Cir. 1976).

**9.** Since we conclude that there was no likelihood of ultimate success on the merits and no showing of irreparable harm, it is unnecessary for us to consider the effects on others and the public interest.

motive of the Corporation. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335–336, 97 S.Ct. 1843, 52 L.Ed.2d 396 n. 15; *Barnes v. St. Catherine's Hospital*, 563 F.2d 324, 328 (7th Cir. 1977). Ekanem has made no such showing. To the contrary, the district court specifically held that the Corporation's employment practices were fair. This finding is amply supported in the record. The Corporation's minority work force complement has ranged between 40–48 per cent since 1973, and blacks hold high level positions within the Corporation. For example, the highest administrative position in the Hospital Division is held by William Jenkins, a black. The highest administrative position in the Division of Public Health is held by Dr. Frank Johnson, another black. The Corporation's Director of Personnel, Lerona Vorhis, is black, as are many other supervisors. In addition, the collective bargaining agreements between the Corporation and the Union contain a racial non-discrimination clause. Dr. Pinckney of the local chapter of the NAACP is a member of the Corporation's Advisory Council of Citizens, and the Corporation has conducted workshops with respect to race relations.[10]

Moreover, since the district court made no finding that the Corporation had a retaliatory motive or intent in terminating Ekanem's employment on February 2, 1977, he has not established a *prima facie* retaliation case. Ekanem did file a charge with the EEOC on February 11, 1975, but the discharge of which he presently complains did not take place until February 2, 1977. This time lapse negates an inference of retaliatory motive. *Mills v. National Distillers Products Co.*, 17 FEP Cases 73, 77 (S.D.Ohio 1978). There has been no showing that Ekanem's December 1974 transfer to the position of Deputy Administrator of the CDHP was discriminatory. Indeed, it resulted in a $3,000 salary increase. The evidence shows that this transfer from the position he had occupied as Assistant Personnel Director was because of his pro-Union position. Even Ekanem considered his transfer from the personnel position to that of Deputy Administrator of CDHP to be a promotion (Defendants' App. 3).

The evidence shows that Mr. Ekanem's job as Deputy Administrator of the CDHP was terminated on February 2, 1977, because the City of Indianapolis did not renew its annual contract with the Corporation, thus forcing the closing of the CDHP department. This bona fide business reason nullifies Ekanem's claim of retaliation. *Smith v. Rexall Drug Co.*, 415 F.Supp. 591, 593 (E.D.Mo.1976), affirmed, 548 F.2d 762 (8th Cir. 1977); *EEOC v. Children's Hospital of Pittsburgh*, 415 F.Supp. 1345, 1350 (W.D.Pa.1976), modified on other grounds, 556 F.2d 222 (3d Cir. 1977); *EEOC v. Del Rio National Bank*, 12 FEP Cases 1668, 1670 (W.D.Tex.1975).

After the Corporation announced the closing of the CDHP office, all employees of that department were given the opportunity to transfer to another department of the Corporation. Mr. Ekanem applied for only one other position, namely, Assistant Administrator of Wishard Memorial Hospital. While Ekanem filled out a corporate form stating that he was interested in a comparable position (Plaintiffs' Exhibit 29), his testimony is that he applied only for this one position (Tr. 209). William Jenkins, the black Administrator of the hospital, interviewed Mr. Ekanem twice concerning the Assistant Administrator's position but instead selected Frank Yacone because of his superior educational background and 12–14 years of experience in hospital administra-

---

10. In view of this showing, the trial judge commented as follows:

"Now, as far as the general observation is concerned regarding discriminatory practices on the part of the defendant corporation. I don't feel this record establishes any general pattern of discriminatory treatment toward minority groups. When you examine the statistics it is quite apparent, as defense counsel point out, that this employer stands in a rather singular position of being fair in the employment of members of the minority. These statistics reveal that.

"So I can make no general finding in that regard in favor of the plaintiff's position at this juncture of this case. * * *." (Tr. 911.)

tion. In fact, the trial court found that Mr. Jenkins acted with "objectivity" in selecting Yacone instead of Ekanem (Tr. 911).[11]

Thus Ekanem failed to show a substantial likelihood of prevailing on the merits. So did Mrs. Marshall. The evidence shows that she was continuously employed by the Corporation since 1970 and has remained in its employ. She routinely received favorable performance evaluations, salary increases and promotions through corporate transfer procedures. When the CDHP department was phased out, Mrs. Marshall received another position with the Corporation and has had favorable evaluations and substantial salary increases since then. The district court therefore was unable to cite any adverse or retaliatory acts toward her. Moreover, there is no evidence that the Corporation even knew until the hearing below that Mrs. Marshall had participated in a third-party EEOC charge in 1974. Since evidence of any retaliatory motive or intent against her was completely lacking, there could be no substantial likelihood of her prevailing on the merits.

*Failure to Show Irreparable Injury*

In addition to the requirement that there be a showing of substantial likelihood of success on the merits, irreparable harm and inadequacy of legal remedies must be shown to warrant a preliminary injunction.

*Sampson v. Murray*, 415 U.S. 61, 90–92, 94 S.Ct. 937, 39 L.Ed.2d 166; *Washington v. Walker*, 529 F.2d 1062 (7th Cir. 1976). The *Sampson* Court noted "the traditional unwillingness of courts of equity to enforce contracts for personal service either at the behest of the employer or of the employee" (415 U.S. at 83, 94 S.Ct. at 950) and reversed a preliminary injunction ordering reinstatement until a determination on the merits. 415 U.S. at 74–75, 92, 94 S.Ct. 937. An extremely strong showing of irreparable injury was required to justify preliminary relief and difficulties in obtaining other employment were deemed insufficient for that purpose. 415 U.S. at 91–92, 94 S.Ct. 937 and n. 68.

Ekanem waited fourteen months after filing his lawsuit before he sought a preliminary injunction, thus undercutting any claim of irreparable harm.[12] His failure to obtain other employment after being terminated by the Corporation does not show irreparable injury. *Sampson v. Murray, supra* at n. 68. Inability to obtain other employment is not considered irreparable harm because a terminated employee has an adequate remedy at law by obtaining a judgment in his favor.[13] *Sampson v. Murray, supra* at 90, 94 S.Ct. 937.

While Ekanem claims that his employment termination caused him to be denied membership in certain professional socie-

11. As Judge Steckler explained:

"Now, I would also say the Court can draw a conclusion Mr. Ekanem was striving to seek positions above the qualifications that those in a position to grant him employment concluded he did * * * have. In other words, when one gains employment he must still satisfy the individual who finally says, yes, you will get the job and I feel Mr. Ekanem has striven to achieve a level of employment that those who are in a position to give it to him did not find that he was qualified and I speak of Mr. Jenkins [Wishard Memorial Hospital Administrator]. I cannot believe that Mr. Jenkins, who by the way made a very favorable impression on the Court, I cannot believe that Mr. Jenkins in any way acted without objectivity in placing a person in the position whom he felt was amply qualified to be his assistant in charge of the hospital." (Tr. 910–911.)

12. His reason for waiting assertedly was because he had not yet received his right-to-sue letter from the Government. However, since the complaint was also based on 42 U.S.C. §§ 1981, 1983, 1985(3) and 1988, the district court would have had jurisdiction even without the right-to-sue letter. Moreover, it seems unlikely that the fact that some of Mr. Ekanem's white co-plaintiffs might not have been able to sue under these civil rights statutes would have prevented him from going ahead alone if this truly were an emergency.

13. It is true that the *Sampson* Court also emphasized the potential disruption of the administrative process if an injunction were to issue in that particular case. However, it is clear from the Court's emphasis on the sufficiency of the backpay remedy (415 U.S. at 90, 94 S.Ct. 937) that its holding as to what is necessary to establish "irreparable harm" applies to Title VII cases generally.

ties, the evidence shows that he is a member of the American Public Health Association and the International Hospital Association. He did not apply to the American College of Hospital Administrators until six months after his employment terminated, and he never filed an application for membership in the American Academy of Health Administration.[14] As to the Indiana Society for Hospital Personnel Administrators, he has not been a member of that organization since 1975, so that he cannot link his loss of membership in that organization to his February 1977 termination. His inability to belong to professional organizations because of his unemployment plainly does not support a finding of irreparable injury. Cf. *Sampson v. Murray, supra* at 91–92, 94 S.Ct. 937.

Similarly, plaintiff Marshall failed to show that she or any other employee of the Corporation had suffered irreparable harm, and the district court made no finding to the contrary.

The reinstatement remedy is permissible only in the most extraordinary cases. *Sampson v. Murray, supra.* Here neither Mrs. Marshall nor Mr. Ekanem proved a substantial likelihood of success on the merits or irreparable injury. Therefore, the granting of the preliminary injunction was a clear abuse of discretion.[15]

The order granting a preliminary injunction is reversed.

SPRECHER, Circuit Judge, dissenting:

I respectfully dissent because of my opinion that the district court did not abuse his discretion in granting the preliminary injunction.

Ekanem was transferred to the Community Development Health Program in December, 1974, because his employer thought he was undermining management. About two years later on February 2, 1977, CDHP was phased out and its employees, with the exception of Ekanem, were transferred to other positions. The district court found that the employer maintained a policy and practice of retaining and reassigning employees who were performing satisfactorily when their jobs were phased out. Given these facts, I conclude that the district court exercised proper discretion in determining that Ekanem showed a substantial likelihood of prevailing on the merits, and that Ekanem's inability to participate in some professional associations amounted to irreparable injury. Mrs. Marshall's case is not as strong as Ekanem's but I would depend upon the district court's discretion in her case also.

I would affirm the order granting the preliminary injunction.

---

14. Ekanem testified that he did not make application to this organization only because he knew it had an "active employment" rule. However, he did not even receive the application form until a year after his termination. Since he apparently did not consider membership in this organization and the American College of Hospital Administrators important at the time he was employed, it is difficult to believe that his present exclusion constitutes "irreparable harm."

15. Our holding was predicted by the district judge when he stated at the conclusion of the evidentiary hearing:

   "There are technical and illegal [*sic*] hurdles that this decision may not be able to overcome. It may very well be the defendants can reverse this Court if the Court orders the plaintiff Ekanem to be reinstated in the employment * * *." (Tr. 909.)