**Eddie WASHINGTON, et al.,
Appellants,**

v.

**Daniel WALKER, as Governor, State of
Illinois, et al., Appellees.**

No. 75–1863.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 15, 1975.

Decided Feb. 4, 1976.*

---

\* This appeal was originally decided by unreported order on February 4, 1976. See Circuit Rule 28. The Court has subsequently decided to issue the decision as an opinion.

Michael J. Hoare, Mid-America Employment Rights Project, Stuart R. Berkowitz, St. Louis, Mo., for appellants.

Herbert Lee Caplan, Asst. Atty. Gen., Chicago, Ill., Howard W. Feldman, Asst. Atty. Gen., Springfield, Ill., for appellees.

Before FAIRCHILD, Chief Judge, and CUMMINGS and SPRECHER, Circuit Judges.

CUMMINGS, Circuit Judge.

In this class action, the three named black male plaintiffs alleged racial discrimination in the selection procedures used to recruit Illinois State Highway Police, popularly known as State Troopers. The defendants are six state officials bearing various relationships to the State Police. Alleging violations of 42 U.S.C. §§ 1981, 1983, and 2000e *et seq.* as well as the Thirteenth and Fourteenth Amendments, plaintiffs sought declaratory, injunctive, and monetary relief. The class which they purport to represent is composed of all black persons "who unsuccessfully applied or will apply for entry level and/or advanced positions with the Illinois State Highway Police or who might have applied but for the discriminatory practices complained of * * * ."

Plaintiffs' claims of discrimination are based on the historical lack of representation of blacks in the State Police ranks and on the requirement that all applicants take certain tests which allegedly unlawfully favor white persons by eliminating a disproportionate percentage of black applicants.

Defendants do not contest that traditionally blacks were excluded from the State Police. In 1974 fewer than 1.7% of the approximately 1690 State Troopers were black, although the pool of eligible applicants was 14.7% black. Defendants have conceded that in "years past discriminatory selection practices may have been inadvertently followed." Nor do defendants contend that, until recently, the selection procedures used by the State Police were non-discriminatory. Applicants for trooper positions are subjected to extensive screening and examination before employment. Until 1975 all applicants were required to take two tests, the Army General Classification Test (AGCT) and a memory test. If an applicant passed these examinations, he underwent an agility test, oral interview, background investigation, polygraph test, physical examination and a final review of the records by the defendant State Police Merit Board. Applicants who successfully complete all of these steps are appointed to the state police training school when positions become available.

Plaintiffs' main targets are the AGCT and the memory test. In the past, passing scores for both tests were 70 and were applicable equally to blacks and

whites. In 1974, passing score for blacks on the AGCT was lowered from 70 to 44 and on the memory test from 70 to 26.[1] Plaintiffs claim that even with such scoring, the AGCT eliminates 29% more blacks than whites. Thus at the 70 score, 66% of white applicants passed the 1974 AGCT whereas only 37% of black applicants passed at the 44 score. Defendants do not dispute that the AGCT and memory tests have not been validated as predictive of subsequent on-the-job performance of blacks.[2]

After the oral argument before us, the defendants advised the Court that until a duly validated examination is available for minority applicants, they will not be required to take the AGCT as a qualification for State Trooper training. We were also informed that the October 1975 training class was recruited from two pools of eligible applicants; of the 130 eligibles, 90 had taken the 1974 AGCT and the passing score for minorities within that group was reduced to produce equal passing percentages for white males and minorities. Finally, the defendants stated that an additional 40 minority eligibles were qualified for that class without requiring them to pass the AGCT.

Prior to instituting this action, the named plaintiffs had filed complaints with the Illinois Fair Employment Practices Commission and later with the Equal Employment Opportunity Commission asserting they had been discriminated against by the defendants' selection devices. In June 1974, the Illinois State Police Merit Board entered into a settlement contract with the EEOC.[3] The settlement requires the Board to maintain hiring practices that do not discriminate on the basis of race, color, sex, religion or national origin, in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e et seq.). The settlement agreement provided that the Board could thereafter use the AGCT and memory test only for the purposes of a validation study. The Board agreed that it would immediately insure that "its current use of unvalidated tests does not adversely affect or preclude a disproportionate number or percent of minority or female job applicants from selection" as State Troopers, and that with respect to each test or examination given "the rejection rate with respect to minorities and females will be no greater than those of white males who pass the test and receive appointment." Although an addendum to the EEOC agreement required the Board to have a school "composed of at least 25% minority," the October 1975 class was assertedly composed of 52% minorities, including 36% black males.

Dissatisfied with the agreement, plaintiffs brought this action. In mid-July 1975, plaintiffs filed a motion for a preliminary injunction, claiming that the named plaintiffs had been rejected as State Troopers even though they met all of the prerequisites required of white applicants. The motion also claimed that defendants were planning to employ tests for prospective members of the October 1975 state police training class that had not been validated with respect to blacks and have traditionally served to exclude them. Plaintiffs requested that the preliminary injunction restrain defendants from enrolling any cadets in the October 1975 and future training classes until their case was decided on the merits. However, the prayer for relief stated that it was not intended to

1. Plaintiffs are not presently challenging the memory test since an applicant's other qualifications are not considered if he does not perform adequately on the AGCT.

2. The procedures for validating a test are discussed in a timely Note entitled "Beyond the Prima Facie Case in Employment Discrimination Law: Statistical Proof and Rebuttal," 89 Harv.L.Rev. 387, 414–415 (1975) The Note also usefully discusses how proposed statistical techniques can aid the parties in employment discrimination litigation.

3. In February 1973, a complaint was filed with the EEOC charging the defendants with discrimination on the basis of sex. This dispute was resolved as part of the consent agreement entered into by the EEOC and the defendants.

interfere with the expectations of minority persons already selected for the class.

The district court subsequently denied the motion for a preliminary injunction, giving its reasons in an unreported order. In view of the consent agreement with the EEOC and the revised minority hiring procedures, the district court found that the defendants were making efforts to eliminate racial discrimination. After explaining that the plaintiffs considered the defendants' tests to be valid when used to qualify white persons, the court noted that a preliminary injunction would not maintain the status quo because the injunction sought would enjoin white persons who passed the tests, validated as to them, from proceeding in the training class whereas minority members who had already been selected would be permitted to proceed with the training. Finally, because the development of a validated test for minorities might take considerable time, the court found that the harm to the public from unfilled state police positions out-weighed the injury to the plaintiffs. As a matter of its equitable discretion, the court concluded that the injunction should not be granted. We affirm.

■ The appropriateness of granting or denying a preliminary injunction "depends upon a balancing of several factors, including the likelihood of success on the merits, the lack of adequate remedy at law, the prospect of irreparable harm if the injunction is not issued and a comparison of the relative hardships imposed on the parties." *Banks v. Trainor,* 525 F.2d 837, 841 (7th Cir. 1975). In reviewing the district court's assessment of these factors, the Court of Appeals should not substitute its judgment for that of the lower court unless it is convinced that the district court abused its discretion. *Banks v. Trainor, supra,* 525 F.2d at 841; *Oburn v. Shapp,* 521 F.2d 142, 147 (3rd Cir. 1975).

In denying the preliminary injunction, the district judge stated that he had considered the traditional standards for its issuance and that plaintiffs had not satisfied those standards. We agree.

■ Plaintiffs have failed to establish a likelihood of success on the merits with respect to the present training class. As already shown, the Illinois State Police Merit Board reduced the passing score for the 1974 AGCT so that no lower percentage of minorities would qualify than white males, and an additional 40 minority eligibles were qualified without having to pass the AGCT. The composition of the October 1975 class shows that the defendants are according minorities a fair representation in the training class.[4] In view of defendants' current good faith in recruiting black employees and their abandonment of the AGCT, plaintiffs have not as yet established a clear likelihood of success on the merits. Therefore, in this regard, the district judge did not abuse his discretion in concluding that a preliminary injunction was inappropriate. *Parham v. Southwestern Bell Telephone Co.,* 433 F.2d 421, 429 (8th Cir. 1970).

■ Neither plaintiffs' motion for a preliminary injunction nor their briefs demonstrate that there is no adequate remedy at law available to them. Title VII of the Civil Rights Act (42 U.S.C. §§ 2000e *et seq.*) would seem to afford them such a remedy if they can prevail on the merits. If the denial of employment to plaintiffs and members of their class is wrongful, the economic injury can be redressed by a backpay order where appropriate. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 421, 95 S.Ct. 2362, 45 L.Ed.2d 280; *Bowe v. Colgate-Palmolive Co.,* 416 F.2d 711 (7th Cir. 1969). In this case, the availability of this remedy and the inability of plaintiffs to show irreparable harm if the injunction is not issued convince us that the district court was correct. *Oburn v. Shapp, supra,* 521 F.2d at 151. Plaintiffs' claim of irreparable injury is based on the paucity of openings for new State

---

4. The present class is composed of 21 white males, 16 black males, 2 Spanish-American males, 4 white females and one black female.

Troopers. The State Police experiences a turnover rate of about 2%, producing about 35 vacancies per year. Approximately 1.3 training classes are held each year to fill these vacancies. Plaintiffs argue therefore that if they prevail on the merits, the district court would be precluded from affording them complete relief unless the 1975 training program is enjoined. We disagree. At most, employment by the State Police would be delayed if the training class is not enjoined. Such delay does not constitute irreparable harm. *Oburn v. Shapp, supra,* 521 F.2d at 151.

Finally, plaintiffs have failed to establish a balance of hardship in their favor. Surely the public interest would be adversely affected by such a preliminary injunction since fewer State Troopers would be available. This was one of the factors that the district court properly considered in denying the requested relief. *Oburn v. Shapp, supra,* 521 F.2d at 152.

In concluding that the district court did not abuse its discretion in denying the motion for a preliminary injunction, we wish to emphasize that we are not prejudging plaintiffs' lawsuit.[5] The allegations of their amended complaint certainly entitle them to an early resolution of this dispute. To avoid another application for injunctive relief, defendants should expedite their search for a duly validated examination for minority applicants and in the interim continue their abandonment of the AGCT for testing that group.

The order denying a preliminary injunction is affirmed.

---

5. Although plaintiffs rely heavily on *Albemarle Paper Co. v. Moody, supra,* where Albemarle did not prove the job relatedness of its testing program, the Supreme Court held that an injunction should not immediately issue against all use of testing at the plant. It was decided that the district court should fashion the necessary relief in the first instance. 422 U.S. at 436, 95 S.Ct. 2362. Our decision is consonant with that direction.