**Frank McNEIL, et al., Plaintiffs,**

v.

**SPRINGFIELD PARK DISTRICT and the Springfield Election Commission, Defendants.**

**No. 87–3016.**

United States District Court, C.D. Illinois, Springfield Division.

April 2, 1987.

Donald M. Craven, Springfield, Ill., for plaintiffs.

Robert C. Walbaum, Thomas R. Appleton, Thomas H. McGary, Paul Brown, Springfield, Ill., for defendants.

## OPINION ORDER

MILLS, District Judge:

In short: preliminary injunction denied.

This case is before the Court upon Plaintiffs' motion for a preliminary injunction pursuant to Fed.R.Civ.P. 65(a) seeking to enjoin the April 7, 1987, elections of the Springfield Park District. Plaintiffs challenge the system of electing the Park Board trustees under § 2 of the Voting Rights Act. 42 U.S.C. § 1973 (Supp. II, 1984).

### I. *Preliminary Injunction Standard*

Whether the issuance of an injunction is appropriate "depends upon a balancing of several factors, including the likelihood of success on the merits, the lack of an adequate remedy at law, the prospect of irreparable harm if the injunction is not issued, and a comparison of the relative hardships imposed on the parties." *Washington v. Walker*, 529 F.2d 1062, 1065 (7th Cir.1976).

The merger of law and equity under the Federal Rules has not altered the precept that injunctive relief is to be governed by traditional principles of equity jurisprudence. J. Moore, J. Lucas, K. Sinclair, Jr., Moore's Federal Practice, ¶ 65.18(1) (2d ed. 1986) (*citing Stainback v. Mo Hock Ke Lok Po*, 336 U.S. 368, 382 n. 26 (1949).

Among the principles of equity to be considered in this instance is the availability of equitable defenses; most notably, Defendant has raised the equitable defense of laches.

### II. *Facts*

Because the Court decides the request for preliminary relief based upon the timelines of its filing, it will not go into a detailed recitation of the facts giving rise to the alleged voting rights violation. It will instead focus on the facts as they relate to the timeframe surrounding the filing of the suit and subsequent motion to enjoin the elections.

On April 2, 1985, these same Plaintiffs filed suit against the City of Springfield alleging violations of § 2 of the Voting Rights Act. That suit proceeded through an 11–day trial and on January 12, 1987, Chief Judge Baker found the Springfield commission form of government violative of § 2 of the Voting Rights Act. *McNeil v. City of Springfield*, 658 F.Supp. 1015 (C.D.Ill.1987).

Thereafter, on January 20, 1987, the Plaintiffs filed three separate suits against the Springfield Park District, Springfield Board of Education, and the Convention Center Board. Only the suit against the Park District is subject to the present request for a preliminary injunction.

Although this action was filed on January 20, 1987, Plaintiffs did not seek to enjoin the April 7, 1987, elections until March 9, 1987. As a result, candidates have already filed nominating petitions and statements of economic interest. The assignment of ballot position have been made and absentee balloting has begun.

Affidavits from the candidates reveal that campaigning has commenced in ear-

nest and that they have expended both time and money in their election efforts. Furthermore, the election commission has verified that $12,000 of unrecoverable costs have been expended in placing the election machinery in motion.

Based on this timetable and the facts surrounding it, the Court concludes that the equitable doctrine of laches counsels against issuance of the requested injunction.

### III. *Law and Analysis*

 Laches originated as an equitable counterpart to the legal statute of limitations. *Equal Employment Opportunity Commission v. Dresser Industries, Inc.*, 668 F.2d 1199, 1201 (11th Cir.1982). The doctrine prevents the bringing of stale claims in equity and the injustice which results from having to defend against such claims. *Id.* Consequently, two elements comprise the laches defense. The first is an inexcusable delay by the plaintiff in asserting his rights. The second is a resulting prejudice to the defendant. *Lingenfelter v. Keystone Consolidated Industries, Inc.*, 691 F.2d 339, 340 (7th Cir.1982).

### A. *Inexcusable Delay*

Two district courts in this circuit have recently applied the defense of laches on facts closely resembling those in the case at bar. In *Knox v. Milwaukee Board of Election Commissioners*, 581 F.Supp. 399 (E.D.Wis.1984), a Wisconsin district court held that an attempt to enjoin an upcoming primary was barred by laches when the suit was filed only seven weeks prior to the election. The plaintiffs in *Knox* had raised voting rights challenges similar to those raised here.

In discussing the necessary elements of the laches defense, Judge Warren found that whether or not the delay is excusable is dependent upon "whether the party against whom the doctrine of laches is be-

ing asserted had knowledge of the facts giving rise to the cause of action." *Id.* at 402. Other factors include the length of the delay and general conceptions of fairness. *Id.* at 403. In *Knox*, the facts indicated that plaintiffs had knowledge of the alleged illegal voting plan for at least 22 months prior to filing the suit. The request for relief, however, came only seven weeks before the election. The Court held this delay inexcusable.

 More importantly, Judge Mihm of this district court just last month refused to enjoin Peoria elections in a voting rights case which has followed almost exactly the same timetable as the present controversy. *Barnes v. City of Peoria*, Memorandum Op. 87–1017 (C.D.Ill., Mar. 18, 1987). Plaintiffs in *Barnes* commenced suit on January 30 of this year, while their counterparts in Springfield instituted this action ten days earlier. The motions for injunctive relief were then filed only one day apart—March 9 and 10 in Springfield and Peoria respectively. Both cities' elections are set for April 7. Hence, this Court finds it well within its discretion to hold the delay in this case inexcusable.

In the case at bar, Plaintiffs filed suit two and one-half months prior to the election and did not seek an injunction until three weeks prior to the election. Yet, facts giving rise to the cause of action were known to Plaintiffs at the time they filed the City of Springfield suit on April 2, 1985.

Although Plaintiffs represent that they wished to obtain an adjudication on the merits in that suit prior to filing the park district suit, this preferred litigation strategy does not excuse the delay.[1] Even if some crucial variations between the city suit and the park district action exist, the basic facts surrounding this lawsuit were known or should have been known to Plain-

---

1. At the hearing, Defendants balked at the suggestion that the laches period should run from the filing of the City of Springfield lawsuit. The apprehension was based on an unwillingness to admit that the City of Springfield suit was factually identical to the present suit.

However, for purposes of the laches defense the Court finds enough similarities between the two suits to conclude that the Plaintiffs here should have been aware of facts giving rise to their cause of action. The Court in no way addresses the question of whether the suits are identical on the merits.

tiffs at the time they filed the city suit two years ago.

■ Moreover, the period of time which elapsed between the filing of the suit and the motion for a preliminary injunction also constitutes inexcusable delay. Delay for laches purposes is not so much a pure quantitative inquiry as it is a "question of degree"—an inquiry into what amount of delay is reasonable under the circumstances. *Smith v. City of Chicago,* 769 F.2d 408, 410 (7th Cir.1985). Under the circumstances of this case, Plaintiffs' failure to move for an injunction until three weeks before the election is inexcusable delay.

In addition to *Knox* and *Barnes,* other authority supports the denial of Plaintiffs' request to enjoin the elections. *Dillard v. Crenshaw,* 640 F.Supp. 1347, 1362 (M.D. Ala.1986) (despite decision favoring plaintiffs on the merits, the court refused to enjoin elections which were three months away); *Simkins v. Gressette,* 631 F.2d 287, 295–96 (4th Cir.1980) (refusal to enjoin election when the suit was filed two days before filing deadline for candidates and the preliminary hearing could not be held until 5½ weeks before the election); *Maryland Citizens for a Representative General Assembly v. Governor of Maryland,* 429 F.2d 606 (4th Cir.1970) (court refused to restrain election when complaint was filed 13 weeks before filing deadline). Thus, this Court's decision concerning inexcusable delay is well grounded in law.

### B. *Prejudice*

The second prong of the laches defense is undue prejudice visited upon the Defendant. The *Knox* court summarized this element as it applied to the facts of that case as follows:

First, [an injunction] would have a devastating impact on the electoral process itself. As the court has already observed nomination papers for all 25 supervisory districts have already been filed and the campaign itself has been underway for nearly two months. In this regard candidates' election reports have been filed, campaign committees organized, contributions solicited, and literature distributed. In addition, the Mil-

waukee County Board of Election Commissioners has itself prepared absentee ballots, distributed informational publications and notices, and undertaken to comply with the myriad of other election requirements prescribed by state law. An order enjoining the elections at this late date would thus result in considerable prejudice to the defendants, the candidates, and the electorate itself.

Even more significantly, an injunction would, by April of this year, render county government impotent, as the terms of office of the present supervisors expire and no elected officials replace them. As defendants established at the hearing on plaintiffs' motion, county government provides important social services to thousands of residents on a daily basis. Absent a legislative branch to authorize the expenditure of funds to sustain these services and to insure their efficient administration, these individuals would not be provided the assistance they need.

581 F.Supp. at 405.

The type of prejudice outlined above is substantially similar to that which would be suffered by the Defendants in this case. Defendants point out that in this election absentee voting has already begun. In addition, affidavits confirm that each of the candidates for trustee has raised money from the general public and incurred campaign expenses, all prior to the filing of the motion in issue. Finally, the assignment of ballot positions has been made. All of these actions occurred before Plaintiffs filed their request for preliminary relief. Thus, the same type of prejudice that the Court found to exist in *Knox* exists here.

Indeed, the Supreme Court has recognized that the prospect of enjoining upcoming elections is to be governed by general equitable principles and that a Court may withhold immediate relief:

Under certain circumstances, such as where an impending election is imminent and the state's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief in a legislative apportionment case,

even though the existing apportionment scheme was found invalid. In awarding or withholding immediate relief, a court is entitled to and should consider the proximity of a forthcoming election and the mechanics and complexities of State elections law, and should act and rely upon general equitable principles. With respect to the timing of relief, a court can reasonably endeavor to avoid a disruption of the election process which might result from requiring precipitous changes that could make unreasonable or embarrassing demands on a state in adjusting to the requirements of the court's decree.

*Reynolds v. Sims*, 377 U.S. 533, 585, 84 S.Ct. 1362, 1394, 12 L.Ed.2d 506 (1964). The principles set forth in *Reynolds* govern the Court's resolution of Plaintiffs' motion, and buttress its conclusion that the upcoming election should not be enjoined.

*Ergo*, Plaintiffs' motion for a preliminary injunction is DENIED. The Springfield Park Board election remains scheduled for Tuesday, April 7, 1987.