Jerry MILLER, et. al., Plaintiffs,

v.

**BOARD OF COMMISSIONERS
OF MILLER COUNTY, et.
al., Defendant.**

No. 1:98–CV–0093–3(WLS).

United States District Court,
M.D. Georgia,
Albany Division.

July 15, 1998.

Noel David Buffington, St. Simons, GA, Jerry Wilson, Lithonia, GA, for plaintiffs.

William M. Shingler, Donalsonville, GA, Danny Clifton Griffin, Colquitt, GA, for defendants.

## ORDER

SANDS, District Judge.

Plaintiffs in the above-entitled case are registered voters in Miller County, Georgia. Defendants are the Board of Commissioners and Board of Education in Miller County, Georgia, ("the County"), as well as Bobby E. Richardson, Judge of the Probate Court in Miller County, who presides over the County's elections. On April 22, 1998, Plaintiffs filed this action for declaratory judgment and a permanent injunction for the County's alleged infringement of their voting rights under several provisions of the United States Constitution and the Voting Rights Act of 1965. The central allegation of the complaint is that the County's electoral systems, each of which consists of a procedure in which voters cast ballots in five, single-member districts and from which officials are elected by a simple majority, deny Plaintiffs the right to vote on account of their race. On July 7, 1998, Plaintiffs filed a motion for partial summary judgment on the separate claim that the County's districting plans are malapportioned, in violation of the Equal Protection Clause of the Fourteenth Amendment. Correspondingly, Plaintiffs have sought a temporary restraining order and preliminary injunction to prevent the County from conducting primary and general elections under the present electoral systems. On July 9, 1998, the Court held a hearing on Plaintiffs' motions, and thereafter, permitted the parties to file supplementary materials, no later than July 14, 1998.

First, the Court finds that, pursuant to Local Rule 7, the parties are permitted to submit response and reply briefs to Plaintiffs' Motion for Partial Summary Judgment. Therefore, the record concerning Plaintiffs' motion may not be fully developed. At this stage of the proceedings, the Court need not resolve the merits of Plaintiffs' action, and neither expresses nor implies any view upon the issues underlying Plaintiffs' claims.

Second, the Court finds that a preliminary injunction is an inequitable remedy at this time. Mindful that a violation of the constitution is of utmost concern to our system of law, a preliminary injunction is an extraordinary remedy—especially in this case wherein key processes of representative democracy in Miller County would be set aside at such a late date and without the benefit of more thorough proceedings on the merits of Plaintiffs' claims. The Court finds that canceling the impending primary election would pose severe burdens and undue prejudice upon the County, as well as possibly prematurely impairing the rights of various other parties who are participating in the electoral process. The Court holds, therefore, that Plaintiffs' motions for a temporary restraining order and preliminary injunction should be denied.

## I. Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs seek partial summary judgment on their claim that the County's electoral systems are malapportioned, in violation of the Equal Protection Clause of the Fourteenth Amendment. Specifically, Plaintiffs contend that the total population deviation among the districts is 21.42 percent, "more than twice the amount allowed by law." *Pls.' Br.Supp.Mot. Partial Summ.J.* at 6.

In *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), the Supreme Court declared unconstitutional the apportionment plans for both houses of the Alabama legislature. Under the existing and proposed plans, disproportionate numbers of persons resided in the state's electoral districts. The Court found that if a person resided in a populous district, then that person's right to vote would be effectively diluted. The Court concluded that "[d]iluting the weight of votes because of place of residence impairs basic constitutional rights under the Fourteenth Amendment." *Id.* at 566, 84 S.Ct. at 1384. The Court held that "as a basic constitutional standard, the Equal Protection Clause requires that the seats in both houses of a bicameral state legislature must be apportioned on a population basis," *id.* at 568, 84 S.Ct. at 1385, meaning that "the Equal Protection Clause requires that a State make an honest and good faith effort to construct districts ... as nearly of equal population as is practicable." *Id.* at 577, 84 S.Ct. at 1390. The constitutional principles enunciated in *Reynolds* have been applied to determine the constitutionality of electoral plans for political subdivisions of the state. *Avery v. Midland Co.,* 390 U.S. 474, 479–81, 88 S.Ct. 1114, 1117–18, 20 L.Ed.2d 45 (1968).

Relying on the authority of the Supreme Court's decision in *Brown v. Thomson,* 462 U.S. 835, 103 S.Ct. 2690, 77 L.Ed.2d 214 (1983), Plaintiffs contend that "deviations of over 10% are presumptively invalid." *Pls.' Br.Supp.Mot. Partial Summ.J.* at 4. In *Brown,* the Court explicated the standard for determining whether an apportionment plan adopted by a state (or its political subdivision) accords with the overarching constitutional principles set forth in *Reynolds:*

> Our decisions have established, as a general matter, that an apportionment plan with a maximum population deviation under 10% falls within this category of minor deviations [described in *Gaffney v. Cummings,* 412 U.S. 735, 745, 93 S.Ct. 2321, 2327, 37 L.Ed.2d 298 (1973) ]. A plan with larger disparities in popula-

tion, however, creates a prima facie case of discrimination and therefore must be justified by the State. The ultimate inquiry, therefore, is whether the legislature's plan may reasonably be said to advance a rational policy, and if so, whether the population disparities among the districts that have resulted from the pursuit of this plan exceed constitutional limits.

462 U.S. at 842–43, 103 S.Ct. at 2696 (quotations and citations omitted). *See also, Voinovich v. Quilter,* 507 U.S. 146, 160–62, 113 S.Ct. 1149, 1159–60, 122 L.Ed.2d 500 (1993).

Plaintiffs filed their Motion for Partial Summary Judgment on July 7, 1998, and the time within which Defendants are permitted to respond has not expired. Local Rule 7.2. Notwithstanding the parties' representations at the hearing and the affidavits submitted in connection with the motion for preliminary injunctive relief, Plaintiffs' proffered evidence in support of their motion does not resolve the "ultimate inquiry" concerning whether the County's electoral districts are unconstitutionally malapportioned. Accordingly, the Court finds that Plaintiffs' motion for partial summary judgment is not ripe for decision.

## II. Plaintiffs' Motions for Temporary Restraining Order and Preliminary Injunction

### 1. Traditional Analysis for Preliminary Injunctive Relief

Plaintiffs seek both a temporary restraining order and preliminary injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, to prevent the County from conducting elections under the present electoral systems. In order to obtain preliminary injunctive relief, Plaintiffs must clearly show: (1) Plaintiffs have a substantial likelihood of succeeding on the merits; (2) Plaintiffs will suffer irreparable injury unless the injunction is issued; (3) the injury threatened to Plaintiffs is greater than any harm the proposed injunction may cause to Defendants; and (4)

if issued, the injunction will be consonant with the public interest. *Carillon Importers, Ltd. v. Frank Pesce Int'l Group*, 112 F.3d 1125, 1126 (11th Cir.1997). Federal courts are obligated to sustain core principles of federalism embedded in the United States Constitution when called upon to enforce the proper remedies for potential and actual violations of voting rights in state elections. In this way, this Court is "entitled to and should consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles." *Reynolds, supra*, 377 U.S. at 585, 84 S.Ct. at 1394.

■ First, as discussed in Part I, *supra*, the Court expresses no view concerning whether Plaintiffs may succeed on the merits of their claim that the electoral districts in the County are unconstitutionally malapportioned. For the purpose of resolving their motion for preliminary injunctive relief, however, the Court accepts for the sake of argument that Plaintiffs have clearly shown a substantial likelihood of success on the merits.

Second, Plaintiffs are not likely to suffer irreparable injury unless the injunction is issued. Although some persons in the County may be under-represented in the upcoming primary elections, that injury is in no sense irreparable. As the Plaintiffs have argued, the Court is vested with broad authority to suspend the results of the primary elections and order special primary elections under a revised districting plan(s) which takes into account each of the alleged conditions of malapportionment and unlawful race discrimination. *See, Pls.' Br.Supp.Mot. Partial Summ.J.* at 10–11. Notwithstanding the obvious impact to select candidates who may appear to qualify for or be eliminated from the general election scheduled for November, the Court is unable to discern any injury to the residents of Miller County that cannot be rectified by another round of primary elections conducted under a revised plan(s).

Third, the Court finds that the injury threatened to Plaintiffs is not greater than the harm the proposed injunction may cause to Defendants. As discussed above, the injury to Plaintiffs is not irreparable. By contrast, the Court finds that suspending the County's local electoral processes at this late date presents an extraordinary burden to each of the Defendants. In reaching this conclusion, the Court does not take lightly the potential injury to Plaintiffs by virtue of their apparent under-representation in some of the County's electoral districts. Nonetheless, the upcoming elections are primary elections that will only partially influence which candidates ultimately succeed to local office. Suspending local election procedures presents a distinct burden to the County. Defendant Richardson has declared that the County has devoted considerable time and resources to prepare for the upcoming primary elections and contends that "[h]alting the 1998 elections at this point in time would necessarily be very disruptive and would maximize voter confusion." *Richardson Aff.* ¶¶ 4–5, 10. The Court finds that an order preventing the County from holding local elections under the present electoral plans would unreasonably interfere with the County's authority to conduct—as well as the voters' abilities to participate in—other statewide contests.

Finally, the Court finds that the injunction sought by Plaintiffs would not be consonant with the public interest in maintaining electoral procedures in which state officials should have the first opportunity to remedy the alleged constitutional and statutory infirmities challenged by the Plaintiffs. The Court finds that the residents in Miller County have a distinct, shared interest in avoiding piecemeal reforms of the electoral processes for their local government bodies. Although the injunctive relief sought by the Plaintiffs at this time may induce the Defendants to enact select changes to the district boundaries to repair the apparent malapportionment among the electoral districts, the Court finds no evidence to suggest that

the other claims raised by Plaintiffs would also be redressed in a revised plan. The upshot is that an order enjoining Defendants' from conducting the upcoming elections would thrust the Court into the principal position of sanctioning the proper electoral. processes, while at the same time, only partially relieving Plaintiffs' concerns as they are set forth in this action. That principal responsibility for enacting electoral processes lies with state government officials, and only when they fail to sustain their shared responsibility under the Constitution and laws of the United States should this Court intervene to mandate otherwise.

## 2. Laches

■ Related to, yet analytically distinct from, consideration of the relative hardship borne by the County under the traditional analysis for preliminary injunctive relief is the equitable defense of laches. Plaintiffs would be barred from relief under the doctrine of laches if the County shows both that Plaintiffs have unreasonably delayed in asserting their rights and that such delay prejudiced the County. The defense of laches does not apply to voting rights actions wherein aggrieved voters seek *permanent* injunctive relief insofar as the electoral system in dispute has produced a recent injury or presents an ongoing injury to the voters. *See, Garza v. County of Los Angeles*, 918 F.2d 763, 772 (9th Cir.1990). Yet there is authority for applying the defense of laches to voting rights actions wherein voters seek preliminary injunctive relief, as Plaintiffs here do. *See, McNeil v. Springfield Park District*, 656 F.Supp. 1200 (C.D.Ill.1987). Defendants have generally pled the defense of laches. *Answer*, Second Defense.

Plaintiffs have acknowledged, both at the hearing and in their supplemental brief, that the present demographic composition of Miller County is substantially similar to that reported in the 1990 Census. *See, Pls.' Suppl.Br.Supp. Temporary Restraining Order* at 9. Manifestly, Plaintiffs could have asserted their respective constitutional rights to vote in equally populous districts *five* years ago (hence allowing ample time for the Plaintiffs to analyze the County's electoral districts in light of the 1990 Census report, as well as any errors subsequently corrected). The Court finds Plaintiffs' delay of several years to raise their constitutional challenge two weeks before a scheduled election is unreasonable, especially considering that the evidence ·proffered thus far in support of their motion mainly consists of one expert's analysis of the resident and voting populations of the County's electoral districts.

■ As discussed above, Defendants argue that the County will be burdened by an order suspending local primary elections, chiefly by sacrificing the investment of resources it has already committed to the upcoming elections. Defendants have represented to the Court, both at the hearing and in their brief in opposition to Plaintiff's motion for preliminary injunctive relief, that. County officials have already undertaken measures to adopt a revised electoral plan which will render moot "almost all" of Plaintiffs' claims in the instant case. *Defs.' Br.Opp. Pls.' Mot.Prelim.Inj.* at 3–4. Defendants contend that if Plaintiffs had filed their complaint against the County earlier, "whatever actions that were necessary could have been taken without the extreme disruption that the [P]laintiffs now wish to create." *Id.* at 9. The Court need not comment upon whatever actions the Defendants now claim County officials could have undertaken in prior years; to do so would be fanciful speculation, especially since County officials remain under a continuing obligation to ensure that their actions and the processes through which they govern comport with the Constitution. Nevertheless, the Court does find sufficient evidence to support the conclusion that Plaintiffs' unreasonable delay has prejudiced the Defendants. Specifically, the Court finds that Plaintiffs filed their complaint on April 22, 1998, and rather than press for a prompt resolution of their claims, agreed to extend

the time for Defendants to file responsive pleadings, until June 18, 1998—approximately four weeks prior to the scheduled primary elections. *Stipulation Extending Time.* On July 7, 1998, more than two weeks after Defendants filed their responsive pleadings, Plaintiffs' filed the instant motion for preliminary injunctive relief. Plaintiffs have not offered any evidence which suggests that Defendants were on notice about either the alleged violations of federal constitutional or statutory law underlying this action or the instant motion for preliminary injunctive relief. Furthermore, Defendants have represented to the Court that "[a]t no time prior to the serving of this complaint had any voter complained to any of the [D]efendants that the apportionment plan was in any way unconstitutional or dilutive of anyone's right to vote." *Defs.' Br.Opp. Pls.' Mot.* at 3; *see also, Richardson Aff.* ¶ 6.

Plaintiffs generally argue that the doctrine of laches "should not apply to the attempt to enjoin the use of a malapportioned plan." *Pls.' Suppl.Br.* at 2. In support of this argument, Plaintiffs cite numerous cases concerning actions to enjoin the use of changes to electoral procedures that had not been precleared, as required under Section 5 of the Voting Rights Act. 42 U.S.C. § 1973c. These cases are inapposite. Under Section 2 of the Fifteenth Amendment, Congress enacted Section 5 of the Voting Rights Act to place an affirmative duty upon select jurisdictions (so-called "covered jurisdictions") to submit changes to voting qualifications, practices, or procedures to the District Court for the District of Columbia or the Attorney General for preclearance to ensure that such changes do not violate the Fifteenth Amendment, as enforced by the terms of the Act. This statutory duty exists apart from each state's obligations arising under the Equal Protection Clause. Defendants represent that the County's electoral plans have been submitted and precleared under Section 5, *Defs.' Br.Opp.* at 3, and Plaintiffs here do not challenge the status of the plans under that provision of the Voting Rights Act.

Plaintiffs summarily argue that the constitutional requirements are of "greater import," yet do not explain or cite any authority that disturbs the Supreme Court's equitable constitutional standard, as set forth in *Reynolds, supra.* Furthermore, Plaintiffs argue that the County's duty to comply with the Constitution "exists independently" and to condition that duty upon a person's challenge would stand compliance with it "on its head and make it a defense." *Pls.' Suppl.Br.* at 2–3. Plaintiffs' analysis misapprehends the extent of the defense of laches in the context of enforcing voting rights: Laches does not work as a complete defense, but only as a defense against *preliminary* injunctive relief. As Justice Kennedy similarly explained in his decision in *Lucas v. Townsend,* 486 U.S. 1301, 108 S.Ct. 1763, 100 L.Ed.2d 589 (1988), plaintiffs challenging an apparently unlawful electoral plan may be entitled to preliminary injunctive relief, in part, because "[p]ermitting the election to go forward would place the burdens of inertia and litigation delay on those whom [Section 5 of the Voting Rights Act] was intended to protect, despite their obvious diligence in seeking an adjudication of their rights prior to the election." *Id.* at 1305, 108 S.Ct. at 1765; *Pls.' Suppl.Br.* at 4. The Court finds that the measure of diligence exhibited by the plaintiffs in *Lucas* is wholly absent in this case.

**CONCLUSION**

As discussed in Part I, *supra,* the Court finds that Plaintiffs' Motion for Partial Summary Judgment is not ripe for decision. Therefore, the Court reserves judgment on Plaintiffs' motion, and neither expresses nor implies any view of the issues underlying Plaintiffs' causes of action.

As discussed in Part II, *supra* under the traditional standard for determining whether a preliminary injunction should be issued, the Court primarily concludes that Plaintiffs have not met their burden of clearly showing that the nature of the injury to them and the relative balance of

hardships justify preliminary injunctive relief.

Secondarily, the Court also concludes that Plaintiffs' unreasonable delay has placed County officials in the untenable position of having to rectify an allegedly unconstitutional electoral process in less than two weeks, and further holds therefore, that Plaintiffs' motion for preliminary injunctive relief is barred under the doctrine of laches.

The Court **ORDERS AND ADJUDGES** that Plaintiff's Motion for Temporary Restraining Order (Doc. No. 11) should be, and hereby is, **DENIED.**

The Court **ORDERS AND ADJUDGES** that Plaintiff's Motion for Preliminary Injunction (Doc. No. 12) should be, and hereby is, **DENIED.**